UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

REGINALD POINT-DU-JOUR and ROSE MIRNA
POINT-DU-JOUR,

       Plaintiffs,

  - against –

AMERICAN AIRLINES,

     Defendant.

--------------------------------------X

FOR ELECTRONIC
PUBLICATION ONLY

**MEMORANDUM & ORDER**

07-CV-3371 (KAM) (RLM)

MATSUMOTO, United States District Judge:

     Plaintiffs Reginald and Rose Mirna Point-du-Jour
("plaintiffs") bring this negligence action to recover damages
for injuries allegedly sustained while passengers on a domestic
flight operated by defendant, American Airlines, Inc.
("defendant").  Plaintiffs are residents of New York and
defendant is a Delaware corporation with its principal place of
business in Texas.  The case, originally filed in New York State
Supreme Court on July 17, 2007, was removed by defendant to this
court on August, 15, 2007, based on diversity jurisdiction.

     Presently before the court is defendant's motion for
summary judgment, pursuant to Federal Rule of Civil Procedure
56, seeking judgment for defendant and dismissal of this case.
Defendant contends that plaintiffs have failed to establish a
*prima facie* case of negligence, namely plaintiffs are unable to
demonstrate any negligence attributable to the defendant or that

the actions of the defendant proximately caused the plaintiffs'
alleged injuries.  Plaintiffs oppose defendant's motion, arguing
that the existence of a material factual dispute precludes
summary judgment.  Oral argument on defendant's motion was held
on May 14, 2009.  (See Doc. No. 63, Transcript of Oral Argument
("Oral Arg. Tr.").)  For the reasons set forth herein,
defendant's motion is granted and the case is dismissed in its
entirety.

## FACTUAL BACKGROUND

The facts set forth below are taken from the parties'
statements and counterstatements pursuant to Local Civil Rule
56.1,[1] together with the supporting depositions and documentary
evidence submitted by the parties in connection with defendant's
motion for summary judgment.  Unless otherwise indicated, the
following facts are uncontested.  The court has considered
whether the parties have proffered admissible evidence in

---

[1] Plaintiffs failed to file a timely response to defendant's
Local Civil Rule 56.1 Statement as required by the rules of this
court.  (See Local Civil Rule 56.1(b).)  Nevertheless, this
court allowed plaintiffs to file a counterstatement pursuant to
Rule 56.1 and has considered that submission in its ruling on
defendant's summary judgment motion.  (See Oral Arg. Tr. at 16-
19.)

support of their positions and has viewed the facts in the light most favorable to the nonmoving plaintiffs.

On August 1, 2004, plaintiffs were passengers on American Airlines flight 1617 scheduled to depart from LaGuardia Airport, New York, at 3:00 p.m. and arrive in Orlando, Florida, at approximately 5:30 p.m.  (Doc. No. 56, Defendant's Local Rule 56.1 Statement ("Def. 56.1 Stmt.") ¶ 2; Doc. No. 55, Declaration of David S. Rutherford ("Rutherford Decl."), Ex. C, Deposition of Reginald Point-du-Jour ("Mr. Point-du-Jour Dep.") at 12–14, 45–46; Rutherford Decl., Ex. D, Deposition of Rose Mirna Point-du-Jour ("Mrs. Point-du-Jour Dep.") at 9.)  Captain James Georgen ("Captain Georgen"), an employee of defendant with thirty-five years experience as a commercial pilot, commanded the Boeing 757 that day with assistance from First Officer Peter Pastore and a group of flight attendants.  (Def. 56.1 Stmt. ¶¶ 4-5; Rutherford Decl., Ex. E, Deposition of James Georgen ("Georgen Dep.") at 5-7, 9-10, 14.)  Plaintiffs testified that after being issued their boarding passes, defendant's ticketing agent informed them that the plane was experiencing "a problem" and was not ready for passengers.  (Mr. Point-du-Jour Dep. at 16–17; Mrs. Point-du-Jour Dep. at 16.)  Consequently, plaintiffs waited "over two hours" before boarding the aircraft.  (Doc. No.

60, Affidavit of Rose Mirna Point-du-Jour ("Mrs. Point-du-Jour Aff.") ¶ 2; see Mr. Point-du-Jour Dep. at 16-17.) Plaintiffs also testified that no specific explanation for the delay was given. (Mr. Point-du-Jour Dep. at 17; Mrs. Point-du-Jour Dep. at 17-18.)

Immediately upon boarding, plaintiffs sat in their assigned adjacent seats in the center of the aircraft and fastened their seatbelts. (Def. 56.1 Stmt. ¶ 3; Mr. Point-du-Jour Dep. at 25; Mrs. Point-du-Jour Dep. at 22.) Their seatbelts remained fastened for the duration of the flight. (Mr. Point-du-Jour Dep. at 50-51; Mrs. Point-du-Jour Dep. at 42-43.)

Plaintiffs testified that prior to takeoff, the "airplane completely lost power." (Doc. No. 60, Affidavit of Reginald Point-du-Jour ("Mr. Point-du-Jour Aff.") ¶ 2; Mrs. Point-du-Jour Aff. ¶ 2.) After forty-five minutes elapsed, the pilot announced takeoff and the plane departed. (Mrs. Point-du-Jour Aff. ¶ 2; Mr. Point-du-Jour Aff. ¶ 2.) According to Captain Georgen, the plane did not experience any pre-flight power outages and departed on time. (Georgen Dep. at 17-18.) The foregoing disputed facts regarding the pre-flight power outage and flight delay are not material to the claims alleged

because the events giving rise to plaintiffs' claims occurred after takeoff.  Moreover, plaintiffs do not claim that the aircraft lost power after takeoff.

As the aircraft approached Savannah, Georgia, the aircraft experienced brief turbulence.  (Def. 56.1 Stmt. ¶ 9). The turbulence, which lasted "five to ten seconds" (Georgen Dep. at 31), was described as "'shak[ing]' followed by 'one jolt'" (Def. 56.1 Stmt. ¶ 9; *see* Mrs. Point-du-Jour Dep. at 44-45). Captain Georgen described the turbulence as a "gust of wind from somewhere." (Georgen Dep. at 29.)  The precise origin and location of the turbulence, however, remained unknown to Captain Georgen.  (*Id.*)  Captain Georgen testified that had he known the origin of the wind gust responsible for the turbulence, he "wouldn't have flown there."  (*Id.*)

Plaintiffs testified that the turbulence caused their backs and legs to make contact with the seat backings and extended tray tables.  (Mr. Point-du-Jour Dep. at 62-64; Mr. Point-du-Jour Aff. ¶ 2; Mrs. Point-du-Jour Dep. at 52-53; Mrs. Point-du-Jour Aff. ¶ 2.)  Mrs. Point-du-Jour additionally testified that her left shoulder made contact with her seat. (Mrs. Point-du-Jour Dep. at 52.)  Plaintiffs allege that the turbulence occurred without announcement or warning from the

pilot or aircraft personnel. (Mr. Point-du-Jour Dep. at 55–57; Mrs. Point-du-Jour Dep. at 41–42.)

By contrast, Captain Georgen testified that after overhearing some conversations about inclement weather over air traffic control and observing it on the weather radar, he directed the flight crew and passengers to take their seats and secure their seatbelts. (Georgen Dep. at 20–21, 26; <u>see</u> Rutherford Decl., Ex. F, Debrief Report of Captain James Georgen ("Debrief Report") ¶ 1.) Captain Georgen further testified that the "seat belt" sign was illuminated at the time of his announcement. [2] (Def. 56.1 Stmt. ¶ 8.)

Plaintiffs testified that following the turbulence incident, the pilot announced that the plane had dropped "fifteen hundred feet." (Mrs. Point-du-Jour Dep. at 49; Mr. Point-du-Jour Dep. at 42–43.) Captain Georgen has no recollection of making such an announcement. (Georgen Dep. at 35.) The court will accept as true for the purposes of this

---

[2] As discussed below, to the extent a factual dispute may exist as to whether Captain Georgen made the announcement directing passengers and crew to take their seats and fasten their seatbelts, it is not material because plaintiffs had their seat belts fastened at all relevant times. (*See* Def. 56.1 Stmt. ¶ 3.)

motion plaintiffs' testimony that the pilot made such an announcement. Aircraft personnel attended to the passengers and distributed ice packs to those claiming injury, including plaintiffs. (Mrs. Point-du-Jour Dep. at 57.)

The parties agree that the incident was isolated and the duration of the flight was uninterrupted. (Mrs. Point-du-Jour Dep. at 68; see Georgen Dep. at 31, 44; Debrief Report ¶ 4.) Thirty-five minutes after the encounter with the turbulence, the plane landed safely in Orlando. (Def. 56.1 Stmt. ¶ 9.) Plaintiffs were escorted off the plane in wheelchairs and transported to a local Orlando hospital where they received medical attention for their alleged injuries. (Mr. Point-du-Jour Dep. at 72-73; Mrs. Point-du-Jour Dep. at 69-71.) They were examined, given "tablets for the pain," and discharged later that day with instructions to pursue treatment with a New York physician if they continued to experience discomfort. (Mr. Point-du-Jour Dep. at 78-81; Mrs. Point-du-Jour Dep. at 77-81.)

## DISCUSSION

In this negligence action, plaintiffs allege that defendant's failure to properly maintain and operate the

aircraft, prevent overcrowding, and warn passengers of turbulence, proximately caused the plaintiffs' injuries. (See Rutherford Decl., Ex. A, Verified Complaint ("Compl.") ¶¶ 4-5; Mrs. Point-du-Jour Aff. ¶ 2; Mr. Point-du-Jour Aff. ¶ 2.) Defendant contends that plaintiffs' inability to proffer evidence supporting the elements of their negligence claim warrants summary judgment. (See Doc. No. 57, Defendant's Memorandum of Law In Support of Defendant's Motion for Summary Judgment ("Def. Mem.") at 7; Doc. No. 58, Defendant's Reply Brief ("Def. Reply Mem.") at 9.)

## I. Summary Judgment Standard

A moving party is entitled to summary judgment as a matter of law "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c). A genuine issue exists when there is adequate evidence in favor of the nonmoving party to support a jury verdict for that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-249 (1986). Material facts are those relevant and necessary facts that, under the appropriate substantive law, will affect the outcome of the case. See id. at 248. The court must assess whether there are any factual issues to be tried while drawing

8

all reasonable inferences in favor of the nonmoving party.  <u>See</u>
<u>id.</u> at 253.

The movant initially bears the burden to show the
absence of any genuine issues of material fact; however, the
movant can discharge that burden by establishing an absence of
evidence supporting an essential element of the nonmoving
party's case.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325
(1986).  If the movant satisfies that burden, the opposing party
must present "significant probative evidence tending to support
the complaint" to survive the motion.  <u>Anderson</u>, 477 U.S. at 256
(citation omitted); <u>see also</u> Fed. R. Civ. P. 56(e)(2) ("[A]n
opposing party may not rely merely on allegations or denials in
its own pleading; rather, its response must . . . set out
specific facts showing a genuine issue for trial.")  Speculative
and conclusory determinations, unsupported allegations, denials
of factual assertions by the movant, and "the mere possibility
that a factual dispute may exist" are all insufficient to
overcome a summary judgment motion, as they are not evidence and
cannot independently create a genuine issue of material fact.
<u>Montessi v. American Airlines, Inc.</u>, 935 F. Supp. 482, 485
(S.D.N.Y. 1996) (quoting <u>Quinn v. Syracuse Model Neighborhood</u>
<u>Corp.</u>, 613 F.2d 438, 445 (2d Cir. 1980)); <u>see</u> <u>Gunther v. Airtran</u>

Holdings, Inc., No. 05 Civ. 2134, 2007 WL 193592, at *6
(S.D.N.Y. Jan. 24, 2007); Lawton v. Alitalia-Linee Aeree
Italiane-Societa, No. 97 Civ. 4472, 1999 WL 632846, at *3
(S.D.N.Y. Aug. 18, 1999).

Even if the movant fails to meet the initial burden,
summary judgment will still be appropriately granted if the
party bearing the burden of proof suffers "a complete failure of
proof concerning an essential element" of the claim as that
"necessarily renders all other facts immaterial." Montessi, 935
F. Supp. at 485 (quoting Celotex, 477 U.S. at 323) (emphasis
omitted); see Gunther, 2007 WL 193592, at *6.

## II. Choice of Law

A federal court sitting in diversity will apply the
choice of law rules of the forum state. See Curley v. AMR
Corp., 153 F.3d 5, 12 (2d Cir. 1998). However, if the parties
"have agreed to the application of the forum law, that consent
concludes the choice of law inquiry." Lawton, 1999 WL 632846,
at *3 n.2 (quoting American Fuel Corp. v. Utah Energy Dev. Co.,
Inc., 122 F.3d 130, 134 (2d Cir. 1997); see Stagl v. Delta
Airlines, Inc., 52 F.3d 463, 467 (2d Cir. 1995) ("Because both
parties agree that New York cases are controlling, we shall

assume that New York law governs this diversity action.");
Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 206 n.1 (2d
Cir. 1984) ("Following New York's choice of law principles, we
apply New York law to this case . . . because the parties have
conducted the entire litigation on the assumption that New York
law governs.")

Defendant asserts that New York state law is
appropriate to evaluate the present negligence action. (Def.
Mem. at 4-6.)  Plaintiffs, who originally filed suit in New York
state court, do not contest this assertion, and therefore are
presumed to have consented to the application of New York law
through their acquiescence.  Moreover, both parties explicitly
cite and rely upon New York law in their motion papers.  (Def.
Mem. at 4-5; Doc. No. 53, Attorney's Affirmation In Opposition
to Motion for Summary Judgment ("Pls. Mem.") 4-5); see Gunther,
2007 WL 193592, at *7 n.8 ("The parties implicitly recognize
that New York law governs this diversity action since both rely
on New York precedent in their papers.").

This court recognizes the substantive forum law as the
applicable authority in in-flight accident cases.  See
Cibbarelli v. Bombardier, Inc., No. 01-CV-6959, 2004 WL 3090594,
at *5 (E.D.N.Y. Sept. 3, 2004) (citing New York law to evaluate

failure to warn, defective design and breach of warranty claims
when airline employee was injured upon plane encountering
turbulence); Montessi, 935 F. Supp. at 485 (citing New York law
to evaluate plaintiff's *prima facie* negligence case for injuries
allegedly sustained when airplane encountered turbulence).
Based on the foregoing agreement by the parties and the cited
authority, this court will apply New York law in deciding the
instant motion.

## III. *Res Ipsa Loquitur*

Plaintiffs attempt to defeat defendant's summary
judgment motion by citing an assortment of aviation accident
cases applying the doctrine of *res ipsa loquitur* ("*res ipsa*")
and asserting that the doctrine is applicable to the instant
case.  (See Pls. Mem. at 4-5.)  Defendant argues that the cases
plaintiffs cite are factually distinguishable from the instant
case, and that the *res ipsa* doctrine has been consistently held
inapplicable to in-flight turbulence cases, such as the present
one.  (See Def. Reply Mem. at 2-3.)

The *res ipsa* doctrine permits, but does not require, an
inference of negligence without direct proof of specific
negligent acts or omissions by the accused.  See Colditz v.

Eastern Airlines, Inc., 329 F. Supp. 691, 692 (S.D.N.Y. 1971);

Sanchez v. American Airlines, Inc., 436 N.Y.S.2d 824, 826 (Civ.

Ct. Queens County 1981).  The *res ipsa* doctrine is one "of

procedural law, rather than substantive law," and therefore

controlled by the law of the forum state.  Fass v. United

States, 191 F. Supp. 367, 370 (E.D.N.Y. 1961); see St. Paul Fire

& Marine Ins. Co. v. City of New York, 907 F.2d 299, 302 (2d

Cir. 1990) (applying New York *res ipsa* law).

Invocation of the *res ipsa* doctrine requires that (1)

the instrumentality responsible for the injury to have been

within the exclusive control of the defendant, (2) plaintiff's

voluntary actions did not contribute to the occurrence, and (3)

"the event was of a kind which ordinarily does not occur in the

absence of someone's negligence . . . ."  Potthast v. Metro-

North Railroad Co., 400 F.3d 143, 149 (2d Cir. 2005).  "If . . .

the accident might have happened from some cause other than the

negligence of the defendant, the presumption . . . does not

arise and the doctrine . . . cannot properly be applied."  Fass,

191 F. Supp. at 371 (quoting Robinson v. Consol. Gas Co. of New

York, 194 N.Y. 37, 41 (1909)).

An "overwhelming weight of authority has declined" to

apply the *res ipsa* doctrine to air turbulence cases because air

turbulence occurs in the absence of negligence. Kelly v.
American Airlines, Inc., 508 F.2d 1379, 1380 (5th Cir. 1975)
(holding Texas *res ipsa* law inappropriate when an alternate
credible explanation for the turbulence, excluding the pilot's
negligence, exists); see Gafford v. Trans-Texas Airways, 299
F.2d 60, 62 (6th Cir. 1962) (holding Tennessee *res ipsa* law
inapplicable when there was no evidence that the cause or result
of the turbulence was produced by the pilot's negligence);
Karuba v. Delta Airlines, Inc., No. 87 Civ. 1455, 1991 WL 51093,
at *2-3 (S.D.N.Y. Apr. 3, 1991) (explaining that New York *res*
*ipsa* law is inappropriate to apply to injury resulting from an
aircraft's encounter with sudden and "unexpected air currents"
because this situation does not necessarily indicate pilot's
negligence); Cudney v. Midcontinent Airlines, Inc., 254 S.W.2d
662, 667 (Mo. 1953) (holding Missouri *res ipsa* law inapplicable
by citing the existence of other causes of airplane turbulence,
excluding pilot negligence).

An aircraft's unexpected encounter with air
turbulence, resulting in "lurching, dipping or bumping" in the
cabin can reasonably occur in the absence of a pilot's
negligence. See Karuba, 1991 WL 51093, at *3; Sanchez, 436
N.Y.S.2d at 826; see also Prosser and Keeton on the Law of Torts

14

§ 39 (W. Page Keeton, ed., 5th ed. 1984) (explaining that unlike an unexplained crash or complete airplane disappearance, "aviation mishaps such as the lurch or bump of a plane when unexpected air currents are suddenly encountered" do not permit the application of *res ipsa*). Changes in meteorological conditions can cause disturbances resulting in a choppy, rough and irregular atmosphere that cannot be anticipated or avoided. See Karuba, 1991 WL 51093, at *3.

To support their contention that the *res ipsa* doctrine is applicable to the present case, plaintiffs cite cases with materially distinguishable fact patterns. See Smith v. Piedmont Airlines, Inc., 728 F. Supp. 914, 917 (S.D.N.Y. 1989) (holding *res ipsa* applicable to claim for injuries sustained from items spilled from an overhead compartment); Colditz, 329 F. Supp. at 693 (holding *res ipsa* applicable to a personal injury claim resulting from a mid-air collision); Faby v. Air France, 449 N.Y.S.2d 1018, 1022–23 (Civ. Ct. Queens County 1982) (holding *res ipsa* applicable when a plane traveling overhead allegedly damaged a home's patio window). The plaintiffs in these cases submitted expert testimony, circumstantial evidence, or plausible theories indicating that the respective events would not have occurred in the absence of negligence. See Smith, 728

F. Supp. at 917 (explaining that the only rationales for the accident, namely, securing the overhead compartment latch or negligent maintenance of the latch, were acts attributable to the defendant); Colditz, 329 F. Supp. at 692 (theorizing that based on the intricate system monitoring airplane flight patterns, the collision would not have occurred in the absence of negligence); Faby, 449 N.Y.S.2d at 1022 (basing invocation of *res ipsa* on credible theory supported by admissible evidence suggesting that vibrations from the plane's unusually low descent resulted in the broken window).

Here, plaintiffs have failed to provide evidence or plausible theories to explain how the turbulence experienced during their flight was the result of the defendant's negligence. They offer no expert testimony describing potential sources or factors responsible for the turbulence that could be attributable to the pilot or to the defendant airline. Captain Georgen, by contrast, testified that while he observed the plane approach an "area of weather" as indicated on the weather radar (see Georgen Dep. at 26), the particular air current responsible for the turbulence originated from an unknown source, and therefore, could not have been avoided. (See Georgen Dep. at 29 (explaining that had he known the origin of the wind, he would

not "have flown there").)  Courts have recognized that air turbulence is presumptively a natural occurrence that cannot be anticipated or avoided.  See Karuba, 1991 WL 51093, at *3; Sanchez, 436 N.Y.S.2d at 825-826.  Plaintiffs' bare and unsupported allegations are insufficient to establish the third element of the *res ipsa* doctrine, that the event is of a kind which ordinarily does not occur in the absence of defendant's negligence.  The *res ipsa* doctrine is therefore inapplicable to the present case.

## IV. Plaintiffs' Negligence Claim

To establish a *prima facie* case of negligence, a plaintiff "must show that: (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of the breach."  Montessi, 935 F. Supp. at 485 (quoting Stagl, 52 F.3d at 467).  To defeat summary judgment, the plaintiff must provide sufficient, admissible, specific and probative evidence to support each required element of the claim.  See Montessi, 935 F. Supp. at 487.

Plaintiffs have satisfied the first element of their negligence claim — that defendant owed them a "cognizable duty

of care." See Montessi, 935 F. Supp. at 485. "The Second Circuit has repeatedly held, construing New York law, that a common carrier . . . owes to its passengers 'reasonable care under the circumstances.'" Karuba, 1991 WL 51093, at *2 (quoting Rainey v. Paquet Cruises, Inc., 709 F.2d 169, 171 (2d Cir. 1983)). Defendant is a common carrier as it offers transportation to passengers for pay, and therefore owes plaintiffs "reasonable care under the circumstances." See Karuba, 1991 WL 51093, at *2 (applying common carrier standard to analogous defendant airline company Delta Airlines, Inc.).

Plaintiffs have failed to satisfy the second element of their negligence claim — that defendant breached a duty owed to plaintiffs. Plaintiffs baldly assert, without evidentiary support, that defendant failed to warn passengers about upcoming turbulence, "properly consult and read instruments," "disengage auto pilot," "anticipate turbulence," "appreciate the severity of the upcoming weather" and "perceive known risks but using their senses, instruments and other information at their disposal." (See Pls. Mem. at 6-7.) Apart from plaintiffs' testimony that Captain Georgen failed to warn passengers of turbulence, which the court accepts as true for the purposes of this motion and discusses below, plaintiffs offer no factual

allegations or evidence in support of their contention that
defendant breached its duty of care toward plaintiffs.
Reasonable inferences are to be construed in favor of the
nonmoving party, but those inferences must be adequately
supported with "significantly, probative" evidence.  Anderson,
477 U.S. at 249.  Plaintiffs fail to assert any specific factual
allegations or offer any admissible evidentiary support in the
nature of expert reports or testimony, establishing the proper
protocol and the breach of that protocol regarding consultation
of aircraft instruments, disengagement of auto pilot, and "the
severity" or mere existence of severe weather, and what the
"known risks" were.  (See Pls. Mem. at 7.)

Further, with respect to both the second element of
plaintiffs' negligence claim, breach of duty, and third element,
proximate cause, plaintiffs assert that defendant's deficient
maintenance,[3] in-flight navigation, and failure to prevent

---

[3]    During discovery, Magistrate Judge Mann ordered defendant
to produce the maintenance log for the flight in question.  (See
Doc. No. 32, Memorandum & Order dated Nov. 3, 2008 ("Nov. 2008
M&O").)  Defendant was unable to produce this log as it was no
longer in defendant's possession, custody or control.  (See Pls.
Mem. at 9.)  Plaintiffs contend that defendant's inability to
produce the maintenance log defies credibility and therefore
precludes summary judgment based on the spoliation of evidence.
(See id.)  Defendant counters that plaintiffs' unsupported

overcrowding caused plaintiffs' injuries.  In support of their

allegations of defendant's negligence, plaintiffs submit only

their own affidavits detailing their observations and purported

theories of causation.  (<u>See</u> Mrs. Point-du-Jour Aff. ¶ 2; Mr.

Point-du-Jour Aff. ¶ 2.)  Plaintiffs have not submitted any

---

accusation has already been argued and resolved and cannot
preclude granting defendant's motion.  (<u>See</u> Def. Reply Mem. at
11.)

    A party can defeat a motion for summary judgment based on
an adverse spoliation claim if the inference of spoliation, in
combination with "some (not insubstantial) evidence" for the
party's claim is present.  <u>Wood v. Pittsford Cent. Sch. Dist.</u>,
No. 07-0892-cv, 2008 WL 5120494, at *2 (2d Cir. Dec. 8, 2008)
(quoting <u>Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243 F.3d 93,
107 (2d Cir. 2001)).  No such evidence exists here.  Moreover,
from a review of the docket, this court agrees that plaintiffs'
spoliation claim has been resolved in favor of defendant.
Magistrate Judge Mann has already entered two orders denying
plaintiffs' motion and renewed motion for sanctions against
defendant for failure to disclose and/or spoliation of
documents.  (<u>See</u> Doc. No. 40, Memorandum and Order dated Dec.
23, 2008 ("Dec. 2008 M&O"); Doc. No. 49, Memorandum and Order
dated Feb. 6, 2009 ("Feb. 2009 M&O").)  Judge Mann found that
plaintiffs' motions remained unsupported by evidence as the
records did not indicate that defendant "withheld nor destroyed
any material documents."  (<u>See</u> Feb. 2009 M&O.)  Additionally, if
plaintiffs objected to Judge Mann's determinations, 28 U.S.C. §
636 requires written objections be filed within ten days of
service of the order.  <u>See</u> 28 U.S.C. § 636(b)(1)(C).  Plaintiffs
failed to make timely objections and therefore cannot preclude
summary judgment on this basis.

expert evidence in support of their opposition to defendant's
motion.

Defendant contends that plaintiffs' theories
concerning the alleged breach of defendant's duty of care and
causation regarding deficient aircraft maintenance, in-flight
navigation and overcrowding, offered in support of plaintiffs'
negligence claim, are based on subjects about which plaintiffs,
as non-experts, are not competent to testify. (See Def. Reply
Mem. at 6.)  The court agrees and further notes that the record
lacks both factual support and expert opinion in support of
plaintiffs' theories.

Federal Rule of Civil Procedure 56(e) requires
affidavits to be based upon "personal knowledge, set out facts
that would be admissible in evidence, and show that the affiant
is competent to testify on the matters stated."  Fed. R. Civ. P.
56(e)(1).  In determining whether plaintiffs are "competent to
testify," the court evaluates plaintiffs' affidavits with
reference to the Federal Rules of Evidence.

Pursuant to Federal Rule of Evidence 701, "[i]f a
witness is not testifying as an expert, the witness' testimony
in the form of opinions or inferences is limited to those

opinions or inferences which are . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." See Fed. R. Evid. 701(c). If evidence reflects specialized knowledge, a designated and qualified expert, who sufficiently meets additional qualifying criteria, may provide the testimony. See Fed. R. Evid. 702.

Here, plaintiffs' affidavits in support of their claims of liability are predicated upon scientific and technical knowledge. Plaintiffs' affidavits cite "overcrowding," "overbooking," and improper maintenance and operation of the aircraft as "substantial contributing" factors to the defendant's alleged inability to "properly and safely handle" aircraft navigation, avoid turbulence, and maintain cabin safety. (Mrs. Point-du-Jour Aff. ¶ 2; Mr. Point-du-Jour Aff. ¶ 2.) The substance of plaintiffs' causation theories is rooted, *inter alia*, in technical aviation science, aerodynamics and engineering, subjects that undoubtedly require "scientific, technical, or other specialized knowledge within the scope of Rule 702" of the Federal Rules of Evidence. See Fed. R. Evid. 701(c).

Plaintiffs are not qualified, under Fed. R. Evid. 702, as experts in any field relevant to their theories of liability.

They neither allege nor profess to have any education, background or specialized knowledge in aviation safety, aviation physics or aerodynamics — the subject of their testimony — as required by Rule 702.  See Fed. R. Evid. 702.  Because plaintiffs are not qualified as experts, they may not offer technically and factually unsupported "evidence" in support of their proffered theories of liability.  Consequently, plaintiffs' affidavits are insufficient to defeat summary judgment.

Aside from their inadmissible "specialized" testimony, plaintiffs' sole support for their causation theory is their attorney's oral argument as to what plaintiffs would have done had they received a warning regarding upcoming turbulence.  Plaintiffs' attorney argues that had plaintiffs been warned of the upcoming turbulence, plaintiffs would have braced themselves for impact, potentially avoiding the injuries sustained.  (See Oral Arg. Tr. at 17-18) (Plaintiffs' counsel argued as follows: "If you know something is coming, you're not — you're going to be down like this . . . . Let the record indicate that the plaintiffs' counsel is scrunching up sort of like a squirrel")

Plaintiffs did not testify that they would have braced themselves in a "squirrel"-like posture if an announcement of

anticipated turbulence had been made.  Nor may plaintiffs rely on their attorney's affirmation regarding precautionary or self-protective measures plaintiffs potentially might have taken had they been warned of turbulence.  See Carnrite v. Granada Hosp. Group, Inc., 175 F.R.D. 439, 448-449 (W.D.N.Y. 1997) ("an attorney's affidavit not based on personal knowledge is an impermissible substitute for the personal knowledge of a party"); Prudent Pub. Co., Inc. v. Myron Mfg. Corp., 722 F. Supp. 17, 21 (S.D.N.Y. 1989) ("arguments or statements by counsel unsupported by the record cannot raise a genuine issue of fact requiring a trial") (citing Beyah v. Coughlin, 789 F.2d 986, 989-90 (2d Cir. 1986)).[4]

Moreover, plaintiffs have failed to establish that defendant's alleged failure to warn proximately caused their injuries.  Even assuming that Captain Georgen failed to advise passengers to remain seated with their seatbelts fastened, plaintiffs testified that they were seated with their seatbelts fastened during the brief turbulence.  (See Def. 56.1 Stmt. ¶ 3;

---

[4] Even if plaintiffs had testified that they would have assumed a "squirrel"-like posture or otherwise braced themselves, plaintiffs have failed to present any expert testimony indicating that this would have prevented their alleged injuries.

Mr. Point-du-Jour Dep. at 51; Mrs. Point-du-Jour Dep. at 38.)
Thus, neither Captain Georgen's alleged failure to warn
passengers nor plaintiffs' unsupported theories establish
proximate causation.

In sum, plaintiffs have failed to offer a viable and
supported theory of negligence, or to otherwise raise a disputed
issue of material fact sufficient to warrant a trial.
Accordingly, defendant's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, defendant's motion for
summary judgment is granted and the case is hereby dismissed in
its entirety. The Clerk of Court is respectfully requested to
enter judgment in favor of defendant, and close this case.

SO ORDERED.

Dated: Brooklyn, New York
       November 5, 2009

                                    /s/
                         _____
                         KIYO A. MATSUMOTO
                         United States District Judge
                         Eastern District of New York